

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

November 5, 2024

**Via ECF**
The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 1020
Central Islip, New York 11722

Re: **Mazariegos v. Kang Lu USA Corp. et al.**
    2:24-cv-04359-BMC

Dear Judge Cogan:

Our office represents Sergio Christopher Galicia Mazariegos ("Plaintiff") and we submit this motion jointly with counsel for Kang Lu USA Corp. and Kang Yue USA Corp. d/b/a Moca Asian Bistro ("Moca Asian Bistro"), and Johnson Chen and Fang Chan, as individuals (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached at a Court-annexed mediation with all parties present on October 16, 2024.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiff's counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

I. **The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

   a. **The Settlement Amount**

The parties agreed to resolve all claims asserted in this action, including Plaintiff's counsel's attorneys' fees, which are addressed below, for the global amount of $21,250.00.

### b. Plaintiff's Position

Plaintiff commenced this lawsuit alleging, *inter alia*, that he was not paid proper overtime rates of pay, appropriate minimum wage, spread of hours compensation and unpaid wages in violation of the Fair Labor Standards Act (FLSA) and New York Labor Laws (NYLL).

Plaintiff Mazariegos alleged that he was employed by Defendants at Moca Asian Bistro from in or around February 19, 2024 until in or around April 29, 2024, with primary job duties and tasks as busboy while performing related miscellaneous duties and tasks for the Defendants, at the instructions and orders of the individual Defendants.

Plaintiff Mazariegos alleged that he was regularly required to work five (5) to six (6) days per week and approximately fifty-six and a half (56.5) to sixty-eight and a half (68.5) hours per week from in or around February 19, 2024 until in or around April 29, 2024.

Plaintiff alleged that he had an agreement with Defendants that he would be paid an hourly rate of $16.00 per hour. However, Plaintiff alleged that he was not compensated at all by the Defendants for all hours worked during the entirety of his employment from in or around February 19, 2024 until in or around April 29, 2024. Thus, Plaintiff alleged that Defendants failed to pay Plaintiff the legally prescribed minimum wage for all his hours worked from in or around February 19, 2024 until in or around April 29, 2024, a blatant violation of the minimum wage provisions contained in the FLSA and NYLL.

Plaintiff Mazariegos further alleged that he worked in excess of ten (10) or more hours per day approximately five (5) to six (6) days per week from in or around February 19, 2024 until in or around April 29, 2024, however, Defendants did not pay Plaintiff an extra hour at the legally prescribed minimum wage for each day worked over ten (10) hours, in violation of the spread of hours provisions contained in the NYLL.

Based on the above, Plaintiff alleged he was owed approximately $5,400.00 in unpaid overtime wages, approximately $6,400.00 in unpaid minimum wages, approximately $880.00 in unpaid spread of hours, not including any other monetary relief that he may have been entitled to under the FLSA or NYLL.

Although Plaintiff was confident that he could prevail on all of his claims should this matter have proceeded to trial, Plaintiff's preference was for a guaranteed outcome via Court-approved settlement. Settlement at this juncture avoids the inherent risks and costs of litigation and allows Plaintiff to recover a substantial amount of his alleged unpaid wages claim – a figure strongly disputed by Defendants – in the near future as opposed to the uncertainty of recovery at a later date in the future. Based on all of the above, Plaintiff believes that the settlement is a fair and reasonable resolution as to his wage claims.

### c. Defendants' Position

Defendants contend that Plaintiff's employment with them started from April 8, 2024, and ended on April 26, 2024. Plaintiff did not work for Defendants in February 2024, nor did he perform any work for Defendants in March 2024.

Defendants further deny that Plaintiff is entitled to any overtime compensation. Defendants maintain records setting forth all the hours that Plaintiff worked on each of his workdays. During all times relevant to this case, Plaintiff's weekly work hours have never exceeded 40 hours. As such, Plaintiff is not owed overtime compensation since no overtime hours were accrued.

Defendants produced timecard records of Plaintiff showing that Plaintiff worked for Defendants from April 8, 2024, to April 26, 2024. Specifically, Plaintiff's working hours per week never exceeded forty hours. Furthermore, timecard records show that Plaintiff worked three to five days per week instead of five to six days per week. Plaintiff suddenly disappeared at the end of April. Defendants were not able to connect with him to pick up his wages ever since.

As for documents pertaining to Plaintiff's work schedule and/or employment period, Plaintiff produced none. To establish liability on a claim for underpayment of wages, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 497 (S.D.N.Y. 2017). Here, Plaintiff did not produce any records or documents that can show he started working for Defendants back in February 19, 2024. Further, Plaintiff failed to present records to prove he worked for Defendants more than forty hours per week. Absent of proof of his work allegedly uncompensated by the Defendants, Plaintiff failed to establish his minimum wage and overtime wage claims under FLSA and NYLL for not meeting the burden of proof.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $21,250.00. The parties believe that this amount is reasonable considering Plaintiff's claims and the Defendants' lack of records in this matter. Moreover, the settlement amount was only achieved

after a mediation session before a qualified and experienced mediator with all parties present. The parties had genuine, bona fide disputes over the dates of Plaintiff's employment, the hours worked by Plaintiff, the pay received by Plaintiff, but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

## II.   The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 7 of the Settlement Agreement is appropriately tailored to claims under the FLSA, NYLL and their associated regulations. The Release does not raise any concerns regarding unequal bargaining power between Plaintiff and Defendants, and the Release is not overbroad such that there is a concern that Plaintiff is releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiff from openly discussing his experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

## III.   Distribution to Plaintiff and Requested Attorneys' Fees and Expenses

### a.   Distribution to Plaintiff

The parties agreed to a global settlement of $21,250.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiff will recover $13,266.00 after the requested attorneys' fees and expenses.

### b.   Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $1,351.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $405.00
- the costs of service of the Summons and Complaint on all Defendants: $646.00
- the costs of mediator's fee: $300.00

      Additionally, Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($19,899.00), or $6,633.00 in attorneys' fees, as agreed upon in Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $7,984.00.

      As such, the settlement funds as broken down into its component parts is as follows:

**Settlement Amount:** $21,250.00
**Attorneys' Expenses:** $1,351.00
**Net Settlement Amount:** $19,899.00 ($21,250.00 - $1,351.00)
**Requested Attorneys' Fees:** $6,633.00 ($19,899.00 / 3)
**Total payable to Attorneys:** $7,984.00 ($6,633.00 + $1,351.00)
**Total payable to Plaintiff:** $13,266.00 ($21,250.00 - $7,984.00)

      Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

      This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation and the recovery secured through their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff. In further support of this fee and cost request, attached hereto as **Exhibit 2** are Plaintiff's counsel's billing records and qualifications and attached hereto as **Exhibit 3** are receipts for Plaintiff's counsel's costs incurred.

### IV.   Closing

      In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable as the settlement was the product of negotiations at a Court-annexed mediation and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

      Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.